United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARSHAL ROTHMAN,

            Plaintiff,

  v.

U.S. BANK NATIONAL ASSOCIATION,

           Defendant.

_____/

No. C 13-3381 MMC

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS**

     Before the Court is defendant U.S. Bank National Association's ("U.S. Bank")

motion, filed September 11, 2013, to dismiss plaintiff Marshal Rothman's ("Rothman")

Amended Complaint ("AC").  Rothman has filed opposition, to which U.S. Bank has replied.

Having read and considered the papers filed in support of and in opposition to the motion,

the Court deems the matter suitable for determination on the parties' respective written

submissions, and hereby rules as follows.[1]

**BACKGROUND**

     The following facts are taken from the AC and from three documents, specifically,

the Adjustable Rate Note ("Note"), Deed of Trust ("DOT"), and Notice of Default and

_____

     [1] By order filed October 16, 2013, the Court deferred ruling on the motion pending
mediation and vacated the hearing set for October 18, 2013.

1    Election to Sell Under Deed of Trust ("Notice of Default"), referenced therein.[2]

2           On February 21, 2007, Rothman, a real estate developer, purchased a house at 18

3    Sheridan Court in Mill Valley, California ("the Property") and entered into a mortgage in the

4    amount of $2,802,500.00 with Downey Savings and Loan Association. F.A. ("Downey").

5    (See AC ¶¶ 6, 13.)  By the terms of the Note and DOT, he was to make initial monthly

6    payments in the amount of $12,260.94.  (See U.S. Bank Request for Judicial Notice

7    ("RJN") Ex. 1 at Ex. A.)  The Office of Thrift Supervision subsequently closed Downey and

8    appointed the Federal Deposit Insurance Corporation as Receiver, after which Rothman's

9    mortgage was assigned to U.S. Bank.  (See AC ¶ 14.)

10          In or around May 2011, Rothman submitted a loan modification application to U.S.

11   Bank.  (Id. ¶ 15.)  In February 2012, having received no response, Rothman "became

12   delinquent on his mortgage payments" in an effort to cause U.S. Bank to "respond to his

13   loan modification application in a more timely fashion."  (See id. ¶ 16.)  After approximately

14   two months, in April 2012, U.S. Bank informed Rothman of its intent to foreclose upon the

15   Property and appointed one of its employees, Christopher Parrish ("Parrish"), to be

16   Rothman's "point of contact" with the bank.  (See id. ¶¶ 17-18.)

17          On or around April 11, 2012, Parrish informed Rothman he should "not worry" about

18   the bank's threat to foreclose because foreclosure proceedings "took a long time" and

19   because Rothman had a pending loan modification application.  (Id. ¶ 19.)  Parrish did not

20   inform Rothman during that conversation that U.S. Bank, during the time the loan

21

22          [2] The Court hereby GRANTS U.S. Bank's Request for Judicial Notice as to the
23   above-referenced three documents, see Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649
     (9th Cir. 1988) (noting court may "take judicial notice of matters of public record outside the
24   pleadings and consider them for purposes of [a] motion to dismiss") (internal quotation and
     citation omitted); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (holding "documents
25   whose contents are alleged in a complaint and whose authenticity no party questions, but
     which are not physically attached to the pleading, may be considered in ruling on a Rule
26   12(b)(6) motion to dismiss").  The Court will not, however, assume the truth of disputed
     facts asserted in those documents, in particular the amount owed as stated in the Notice of
27   Default, which amount, as set forth below, is in dispute.  See Nogaliza v. U.S. Bank, N.A.,
     2012 WL 3026404, at *3 (N.D. Cal. July 24, 2012) (holding, where judicially noticed
28   document contains facts "subject to reasonable dispute," court "does not assume the truth
     of [those facts]") (internal quotation and citation omitted).

1  modification application was pending, would continue to assess late charges against

2  Rothman's account for delinquency, would impose "various other fees and charges,"

3  including property preservation fees and foreclosure attorney's fees, and would levy

4  compounding interest charges against Rothman's total delinquency.  (Id. ¶¶ 20-21.)

5          Approximately four months later, on or around August 28, 2012, Rothman called

6  U.S. Bank's foreclosure department and spoke with an employee named Maria Carlos

7  ("Carlos").  (See id. ¶ 22.)  Rothman asked Carlos "what amount he needed to pay to cure

8  his delinquent mortgage and reinstate his loan."  (Id. ¶ 22.)  Carlos told Rothman that

9  "paying $74,643.23 would make him current on his mortgage and halt the foreclosure

10  proceedings."  (Id. ¶ 23.)  Several days later, Rothman paid $74,643.23 to U.S. Bank.  (Id.

11  ¶ 24.)

12          Shortly thereafter, in September 2012, U.S. Bank "declared [Rothman] to be in

13  default on the mortgage and note."  (See id. ¶ 37.)  Rothman later learned this was due to

14  the addition by U.S. Bank of an "'escrow' charge of nearly $60,000 to [his] delinquency" (id.

15  ¶ 26), which he alleges represented an "accelerated . . . balance of his monthly escrow

16  payments" for property insurance and property taxes (see id. ¶ 30).  As of August 28, 2012,

17  however, Rothman had been current on his property insurance and property taxes, which

18  payments were made by U.S. Bank out of monies paid by Rothman into his escrow account

19  and not from any funds advanced by the bank.  (Id. ¶¶ 27-29.)

20          When Rothman learned his $74,643.23 payment had not cured his indebtedness, he

21  asked Parrish for an explanation.  (Id. ¶ 33.)  Parrish told him he would look into the matter,

22  and Rothman waited for him to respond.  (Id. ¶¶ 33-35.)  Beginning in December 2012,

23  Rothman "repeatedly" asked U.S. Bank for a "complete and accurate accounting so that he

24  could pay off his indebtedness and reinstate his mortgage."  (Id. ¶ 38.)  "In addition,"

25  Rothman sent a Qualified Written Request ("QWR") to U.S. Bank pursuant to the Real

26  Estate Settlement Procedures Act ("RESPA").  (See AC ¶ 39);[3] see also 12 U.S.C.

27  _____

28      [3] The AC does not provide the date or otherwise indicate the time at which the QWR
was sent.

§ 2605(e).  The bank did not make any corrections to Rothman's account in response to his QWR (see AC ¶ 89), and the accounting he ultimately received "after months of requests" comprised "incomprehensible printouts taken directly from U.S. Bank's computer systems" that "employ[ed] jargon particular to U.S. Bank's mortgage servicing operations and use[d] a peculiar formatting that is difficult for non-U.S. Bank mortgage servicing employees to understand" (see id. ¶ 44).

On May 16, 2013, a Notice of Default was recorded against the Property (see id. ¶ 48; U.S. Bank RJN Ex. 2), which stated that Rothman, as of May 15, 2013, owed $213,774.53 in "past due payments plus permitted costs and expenses."  (See U.S. Bank RJN Ex. 2.)

Rothman alleges the amount U.S. Bank claims is due and owing is "noticeably incorrect" as he "has missed only ten or so monthly payments of about $14,000 each" (id. ¶ 45), and U.S. Bank "has done nothing to actually preserve the property in any way" (id. ¶ 46).

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

4

1   "To survive a motion to dismiss, a complaint must contain sufficient factual material,

2   accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

3   556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must

4   be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at

5   555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

6   allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

7   **DISCUSSION**

8       In the AC, Rothman alleges nine causes of action: (1) "Wrongful Foreclosure";

9   (2) "Negligent Misrepresentation"; (3) "Breach of Contract"; (4) "Breach of the Implied

10  Covenant of Good Faith and Fair Dealing"; (5) "RESPA–12 U.S.C. §§ 2601, et seq.";

11  (6) "Cal. Civil Code § 2924.12"; (7) "Promissory Estoppel"; (8) "Accounting"; and (9) "Cal.

12  Bus. & Prof. Code §§ 17200, et seq."  As to each, U.S. Bank argues Rothman fails to state

13  a claim upon which relief can be granted.

14       **A.**     **First Cause of Action: Wrongful Foreclosure**

15       Rothman's First Cause of Action is based on the above-referenced Notice of Default,

16  which, Rothman alleges, is based upon "a wildly inflated total indebtedness figure that is

17  the result of [U.S. Bank's] adding in erroneous or illegal charges and fees, as well as

18  compounded late fees and interest resulting from [U.S. Bank's] purposefully dilatory

19  conduct."  (See AC ¶ 60.)

20       "A lender or foreclosure trustee may only be liable to the mortgagor or trustor for

21  wrongful foreclosure if the property was fraudulently or illegally sold under a power of sale

22  contained in a mortgage or deed of trust."  Rosenfeld v. J.P. Morgan Chase Bank, N.A.,

23  732 F. Supp. 2d 952, 961 (Aug. 9, 2010).  Consequently, a cause of action for wrongful

24  foreclosure is "premature" where no foreclosure sale has taken place.  Id.  Here, no

25  foreclosure sale has taken place.[4]  The Court thus finds Rothman's claim premature based

26

27       [4] Rothman's reliance on Nguyen v. J.P. Morgan Chase Bank, N.A., 2013 WL
2146606 (N.D. Cal. May 15, 2013), is misplaced.  See id. at *4 (allowing wrongful

28  foreclosure action to proceed where plaintiff only sought injunctive relief and alleged two
notices of trustee's sale had been recorded).

5

1    on the facts alleged and will afford Rothman leave to amend to allege additional facts to

2    cure, if he can do so, the deficiency noted.

3           Accordingly, Rothman's First Cause of Action will be dismissed with leave to amend.

4           **B.      Second Cause of Action: Negligent Misrepresentation**

5           Rothman's Second Cause of Action is based on Parrish's failure to inform Rothman

6    that late charges and other fees would continue to be assessed while Rothman's loan

7    modification application was pending (see AC ¶¶ 19-20; 43; 70-71), as well as on Carlos's

8    statement that "paying $74,643.23 would make [Rothman] current on his mortgage and halt

9    the foreclosure proceedings," in which Carlos "failed to disclose to [Rothman] that [U.S.

10   Bank] considered its lump sum escrow charge to be part of [Rothman's] total indebtedness

11   and did not include this charge in the total indebtedness figure quoted to [Rothman]" (see

12   id. ¶¶ 23, 63-64).

13          To establish a claim for negligent misrepresentation, a plaintiff must allege "(1) the

14   misrepresentation of a past or existing material fact, (2) without reasonable ground for

15   believing it to be true, (3) with intent to induce another's reliance on the fact

16   misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."

17   Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2007).

18   "[A] positive assertion is required; an omission or an implied assertion or representation is

19   not sufficient." Id.[5]  Where a defendant's statement "purports to state the whole truth,"

20   however, "misleading half-truths" may constitute affirmative misrepresentation. See Randi

21   W. v. Muroc Joint Unified School Dist., 14 Cal. 4th 1066, 1082-83 (1997) (internal quotation

22   and citations omitted) (holding, where defendants, "having undertaken [in letters of

23   recommendation] to provide some information regarding [teacher's] credentials and

_____

25          [5] In his opposition, Rothman cites to cases regarding the pleading standard for
     "fraudulent concealment," a tort based on an omission.  (See Opp'n at 12:16-13:2.)
26   Rothman, however, has not brought a cause of action for fraudulent concealment, nor does
     he allege U.S. Bank acted with an intent to defraud, as required to state a claim for such
27   tort.  See Los Angeles Unified School Dist. v. Great American Ins. Co., 49 Cal. 4th 739,
     750 n.5 (2010) (noting fraudulent concealment "as usually formulated includes elements of
28   intentional concealment or suppression with an intent to defraud," whereas negligent
     misrepresentation "allows recovery in the absence of scienter or intent to defraud").

1  character," were "obliged to disclose all other facts," in particular teacher's history of

2  inappropriate sexual conduct with students, "which materially qualif[ied] the limited facts

3  disclosed").

4       Here, with respect to Parrish, Rothman's claim is based solely on Parrish's omission

5  during his conversations with Rothman that Rothman "would be subject to compounding

6  late fees and interest upon all indebtedness (not just delinquent principle)" should he

7  choose not to make payments during the pendency of his loan modification application.

8  (See AC ¶¶ 19-20, 70-71.)  Parrish's omission, alone, is not sufficient to establish a claim

9  for negligent misrepresentation, see Apollo Capital Fund, 158 Cal. App. 4th at 243, nor do

10  the omitted facts "materially qualify," see Randi W., 14 Cal. 4th at 1082, Parrish's

11  affirmative statement, which pertained to the imminence of foreclosure (see AC ¶¶ 19, 43).

12       With respect to Carlos, however, Rothman alleges both an assertion, that a payment

13  of $74,643.22 would make him "current on his mortgage" (see AC ¶ 23) and an omission,

14  of the fact that there was an additional lump sum charge (see AC ¶ 64), the latter of which

15  "materially qualif[ies]" the assertion as to the amount owed, see Randi W., 14 Cal. 4th at

16  1082.

17       U.S. Bank argues that Rothman has failed to plead justifiable reliance and damages

18  because the bank advised him after his conversation with Carlos that he had an escrow

19  shortage (see Mot. at 8:27-9:1; Reply at 3:25-4:3), and because the amount he in fact paid

20  was "already due and owing under the Note" (see Mot. at 8:24-26).  Liberally construed,

21  however, the AC can be read to allege that Rothman, had he been informed by Carlos as

22  to the escrow shortage in addition to the $74,643.22 quoted to him by Carlos, could have

23  paid the additional amount at that time, but that in the time between his conversation with

24  Carlos and the time U.S. Bank advised him of the escrow shortage, he became unable to

25  pay the escrow shortage and the interest and late fees thereon (see AC ¶ 74), which led

26  U.S. Bank to declare him to be in default and eventually to the recording of the Notice of

27

28

1   Default and the resulting harm to Rothman's credit rating (see AC ¶ 51).[6]  Although U.S.

2   Bank argues Rothman's contention that he would have paid the full amount of his debt in

3   August 2012 had he known it "lacks credibility" (see Reply at 4:9), the Court cannot at this

4   stage in the proceedings make such a determination, see NL Industries, Inc., 792 F.2d at

5   898 (noting court "must accept all material allegations in the complaint as true and construe

6   them in the light most favorable" to the plaintiff).

7         U.S. Bank also contends Rothman's negligent misrepresentation claim is pleaded

8   with inadequate specificity.  (See Mot. at 9:16-22); see, e.g., Villegas v. Wells Fargo Bank,

9   N.A., 2012 WL 4097747, at *7 (N.D. Cal. Sept. 17, 2012) (noting majority of California

10  district courts have held Rule 9(b)'s heightened pleading standard applies to claim of

11  negligent misrepresentation; collecting cases).  As to Carlos's statement, however, the AC

12  identifies the speaker, the content, the date on which it was made, the place and mode of

13  communication, and how the statement was false.  (See Opp'n at 14:1-5 (citing AC ¶ 22-

14  33).)  In short, Rothman has alleged the requisite "who, what, when, where, and how of the

15  misconduct charged."  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.

16  2003).

17        Lastly, U.S. Bank argues Rothman's claim fails because Rothman does not allege

18  Carlos lacked a reasonable basis for believing the content of her statement.  The Court

19  agrees.  As noted, a party asserting negligent misrepresentation must plead the

20  misrepresentation was made "without reasonable ground for believing it to be true," see

21  Apollo Capital Fund, 158 Cal. App. 4th at 243, which Rothman, in the AC, has not done.

22        Accordingly, Rothman's Second Cause of Action will be dismissed with leave to

23  amend.

24

25

26         [6] In his opposition, Rothman advances an alternative damages theory that, if his
    property is foreclosed, he will have been damaged by paying $74,643.23 that he would not
27  otherwise have had to pay, given his mortgage is a nonrecourse loan and U.S. Bank could
    not pursue a deficiency judgment against him.  (See Opp'n at 11:25-28.)  As Rothman has
28  not alleged such facts in the AC, the Court does not address them herein.

1

**C.      Third Cause of Action: Breach of Contract**

2       Rothman's Third Cause of Action is based on fees assessed by U.S. Bank for

3  "property preservation services not actually performed" and for property insurance and

4  property tax payments on which Rothman was current, which, Rothman alleges, is not

5  permitted under the DOT and Note and, moreover, interfered with Rothman's right under

6  the note to reinstate his mortgage.  (See AC ¶¶ 77-80.)

7       The elements of a cause of action for breach of contract are: (1) the existence of a

8  contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's

9  breach; and (4) damages to the plaintiff as a result of the breach.  Armstrong Petrol. Corp.

10 v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n.6 (2004).  U.S. Bank contends

11 Rothman has failed to plead performance under the contract, and that he has failed to

12 specify which of U.S. Bank's "actions breached the contract and why."  (See Reply at 6:8-

13 9.)

14      As U.S. Bank correctly observes, the AC acknowledges that Rothman, "frustrated"

15 by U.S. Bank's lack of response to his request for a modification, stopped making

16 payments in or around February 2012 (see AC ¶ 16) and that, as of the filing of the AC, he

17 had missed "ten or so monthly payments of about $14,000 each" (see AC ¶ 45).  As

18 Rothman points out, however, the AC also pleads that, as of the time of the alleged breach

19 by U.S. Bank, he had "fully performed the act agreed upon [under the contract]."  See Gray

20 v. Bekins, 186 Cal. 389, 394 (1921).  In particular, the AC alleges that on or around August

21 28, 2012, Rothman paid the $74,643.23 in missed payments, as required at that point to

22 reinstate his loan (see AC ¶ 23-24), and that U.S. Bank's demand for the additional sums

23 upon which it "declared [him] to be in default . . . on or around September 2012" (see AC

24 ¶ 37) was not permitted by and constituted a breach of the contract, in that Rothman was at

25 the time current on his property insurance and property tax payments (see AC ¶¶ 26-29).

26      As to the second point, although, as U.S. Bank points out, the AC describes U.S.

27 Bank's alleged breach as "taking actions not permitted under the agreement" (see AC

28 ¶ 81), it is clear from the immediately preceding paragraphs that the breaches alleged are

9

1
2
3
4

U.S. Bank's charging of "fees for property preservation services not actually performed" and "a lump sum escrow fee for property insurance and property tax payments . . . when [Rothman] was already current on his monthly escrow payments" (see AC ¶¶ 77-80; see also id. ¶¶ 23-30, 46).[7]

5

Accordingly, Rothman's Third Cause of Action is not subject to dismissal.

6
7

**D.    Fourth Cause of Action: Breach of Implied Covenant of Good Faith and Fair Dealing**

8
9
10
11
12
13
14
15
16
17
18
19
20
21

Rothman's Fourth Cause of Action alleges that U.S. Bank breached the implied covenant of good faith and fair dealing by "unfairly interfer[ing] with [his] attempts to reinstate his mortgage" and by "deliberately fail[ing] to provide [him] with an accurate, comprehensive accounting to enable him to reinstate his mortgage."  (See AC ¶¶ 84-85.) Every contract contains an implied-in-law covenant of good faith and fair dealing, see Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc., 2 Cal. 4th 342, 371 (1992), and "the burden [so] imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement," Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1393 (1990) (internal quotation and citation omitted). Because "the implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose," Carma Developers, 2 Cal. 4th at 373, "as a general matter, implied terms should never be read to vary express terms," see id. at 374.

22
23

U.S. Bank contends the Fourth Cause of Action "does not point to any contractual provision . . . U.S. Bank violated or allege any specific act undertaken by U.S. Bank that

24
25
26
27
28

---

[7] U.S. Bank notes that Rothman "does not point to any specific contractual provision that U.S. Bank violated."  (See Mot. at 10:1-2.)  "Federal procedural law," however, "does not . . . require plaintiffs to attach a copy of the contract to a complaint alleging breach of that contract or to recite the contract terms verbatim," see Daly v. United Healthcare Ins. Co., 2010 WL 4510911, at *3 (N.D. Cal. Nov. 1, 2010), and, here, U.S. Bank, as evidenced by its motion, was able to determine from the complaint the provisions upon which Rothman's breach of contract claim is predicated (see id. at 10:1-9; RJN Ex. 1 at Ex. B §§ 3, 5, 14).

1    was in bad faith in violation of any specific contractual provision."  (See Mot. at 11:13-15.)

2    The AC makes sufficiently clear, however, that the Fourth Cause of Action is based on U.S.

3    Bank's alleged "interfer[ence] with Rothman's [contractual] right to reinstate his mortgage"

4    (see AC ¶ 80), such interference consisting of the alleged communication of misinformation

5    as to the amount owed and U.S. Bank's failure to properly respond to Rothman's inquiries

6    as discussed above herein.

7          Taking Rothman's allegations as true, and considering them in the light most

8    favorable to him, the Court finds Rothman has sufficiently pleaded U.S. Bank's interference

9    with his "right . . . to receive the benefits of the agreement," specifically, his right to

10   reinstate his loan.  See Daly v. United Healthcare Ins. Co., 2010 WL 4510911, at *4

11   (N.D. Cal. Nov. 1, 2010) (noting "exact nature and scope of . . . duty [under implied

12   covenant] is a factual inquiry and is based on the purposes of the [a]greement, the express

13   terms of the [a]greement, and the reasonable expectations of both parties").

14         Accordingly, Rothman's Fourth Cause of Action is not subject to dismissal.

15         **E.      Fifth Cause of Action: RESPA**

16         Rothman's Fifth Cause of Action alleges that he sent U.S. Bank a QWR pursuant to

17   RESPA, see 12 U.S.C. § 2605(e), but that U.S. Bank "failed to make appropriate

18   corrections" to Rothman's account or "to provide a meaningful written clarification to

19   [Rothman] as to why [his] account was correct as determined by U.S. Bank."  (See AC

20   ¶¶ 88-90.)  Under RESPA, "a borrower's written inquiry requires a response as long as it

21   (1) reasonably identifies the borrower's name and account, (2) either states the borrower's

22   'reasons for the belief . . . that the account is in error' or 'provides sufficient detail to the

23   servicer regarding other information sought by the borrower,' and (3) seeks 'information

24   relating to the servicing of [the] loan.'"  Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 666

25   (9th Cir. 2012) (quoting 12 U.S.C. § 2605(e)(1)(A)-(B)).

26         U.S. Bank argues Rothman fails to allege the date or contents of the QWR in

27   question and that his allegation that he "issued" a QWR to U.S. Bank is, consequently,

28

1   merely a legal conclusion.[8]  The Court agrees.  As U.S. Bank additionally points out, to

2   state a claim for a RESPA violation, a plaintiff must allege damages constituting "a loss . . .

3   related to the RESPA violation itself," see Hensley v. Bank of New York Mellon, 2011 WL

4   4084253, at *4 (E.D. Cal. Sept. 13, 2011); see also 12 U.S.C. § 2605(f) (allowing recovery

5   of "actual damages to the borrower as a result of the failure" to respond appropriately to

6   QWR); here, Rothman alleges in general terms only that he "has been damaged by U.S.

7   Bank's actions" (see AC ¶ 91), without stating what, if any, harm he alleges constituted "a

8   loss . . . related to the RESPA violation itself," see Hensley, 2011 WL 4084253, at *4.[9]

9          Accordingly, Rothman's Fifth Cause of Action will be dismissed with leave to amend.

10         **F.      Sixth Cause of Action: California Civil Code § 2924.12**

11         Rothman's Sixth Cause of Action is based on alleged inaccuracies in the Notice of

12  Default recorded against him on May 16, 2013.  (See AC ¶ 95.)  Specifically, Rothman

13  alleges that the total indebtedness stated therein includes the "various charges and fees"

14  Rothman elsewhere in the AC alleges have been levied against him wrongfully.  (See id.)

15  Civil Code section 2924.12 allows "a borrower [to] bring an action for injunctive relief to

16  enjoin a material violation" of, inter alia, Civil Code section 2924.17.  See Cal. Civil Code

17  § 2924.12(a)(1).  Civil Code section 2924.17(a) requires that "a notice of default . . .

18  recorded by or on behalf of a mortgage servicer in connection with a foreclosure . . . be

19  accurate and complete and supported by competent and reliable evidence."  See Cal. Civ.

20  Code § 2924.17(a).

21         U.S. Bank, citing Michael J. Weber Living Trust v. Wells Fargo Bank, N.A., 2013 WL

22  1196959, at *4 (N.D. Cal. March 25, 2013), argues that section 2924.17 was enacted to

23  prevent robo-signing and that, absent allegations of robo-signing, Rothman does not state

24  —————————

25  [8] In his opposition, Rothman makes reference to a letter he sent on May 22, 2013,
    and U.S. Bank's June 5, 2013 response thereto, neither of which is attached to the AC nor
26  is the content of either document set forth therein.

27  [9] In his opposition, Rothman points to his "having [had] to spend money on
    attempting to halt [foreclosure] proceedings."  (Opp'n 22:7-9.)  "[S]imply having to file suit,"
28  however, "does not suffice as a harm warranting actual damages" under RESPA.  See
    Hensley, 2011 WL 4084253, at *4.

1  a claim.  Weber, however, concerned a mortgage servicer's "sign[ing] foreclosure

2  documents without determining the right to foreclose," see id. at *4, a practice prohibited by

3  section 2924.17(b) as opposed to section 2924.17(a), the section on which Rothman relies

4  (see AC ¶ 94 (alleging section 2724.17 requires notice of default "be accurate")).  U.S.

5  Bank further argues it was "entitled to initiate foreclosure proceedings," irrespective of the

6  alleged inaccuracy, in that Rothman concededly has missed a number of payments.  (See

7  Reply at 10:6-10.)  U.S. Bank does not, however, argue that the alleged $60,000

8  discrepancy (see, e.g. AC ¶ 26) does not qualify as a "material violation" sufficient to

9  support injunctive relief under section 2924.12(a).

10       According, Rothman's Sixth Cause of Action is not subject to dismissal.

11       **G.     Seventh Cause of Action: Promissory Estoppel**

12       Rothman's Seventh Cause of action is based on Carlos's August 2012 statement

13  that "paying $74,643.23 would make [Rothman] current on his mortgage and halt the

14  foreclosure proceedings."  (See AC ¶¶ 23, 98.)  Rothman alleges such statement was a

15  promise, that he justifiably relied on it in immediately paying the referenced amount, and

16  that, had he known reinstatement would have required payment of the escrow charge, he

17  would have paid it.  (See id. ¶¶ 98-102.)  "The elements of a promissory estoppel claim are

18  (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the

19  promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the

20  party asserting the estoppel must be injured by its reliance."  Aceves v. U.S. Bank, N.A.,

21  192 Cal. App. 4th 218, 225 (2011) (internal quotation, citation, and alteration omitted).

22       U.S. Bank argues that it "promptly notified [Rothman] of additional information

23  affecting the alleged oral promise," and, consequently, that Rothman has failed to establish

24  justifiable reliance and damages.  (See Reply at 11:12-14, 11:19-20.)  For the reasons

25  discussed above with regard to Rothman's negligent misrepresentation claim, the Court

26  finds Rothman has sufficiently pleaded both elements.

27       Accordingly, Rothman's Seventh Cause of Action is not subject to dismissal.

28

1

### H.    Eighth Cause of Action: Accounting

Based on the facts described above, Rothman's Eighth Cause of Action seeks "an accounting to determine the exact amount of [his] delinquency so that he can reinstate his mortgage."  (See AC ¶ 107.)

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting."  Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179 (2009).  Here, as U.S. Bank correctly points out, Rothman does not allege that a balance is due him, or that he lacks an adequate remedy at law to determine such amount.  Rather, he alleges he owes an uncertain amount and seeks an accounting to determine that amount.  Rothman, however, has recently filed a notice in which he states he has "recently made a reinstatement payment upon his mortgage" (see Notice of Plaintiff's Withdrawal of Motion for Preliminary Injunction, filed April 7, 2014), and, under the circumstances, the Court will afford him leave to amend to allege, if he can do so, an amount owed to him that cannot be determined without an accounting.

Accordingly, Rothman's Eighth Cause of Action will be dismissed with leave to amend.

### I.    Ninth Cause of Action: California Business & Professions Code § 17200

Rothman' Ninth Cause of Action, brought under Business and Professions Code section 17200 ("UCL"), is both derivative of his first eight causes of action and based on one additional allegation, specifically, that the lump sum escrow charge "exceeds the one-twelfth plus reasonable cushion limitation imposed" by RESPA.  (See AC ¶ 112 (citing 12 U.S.C. § 2609).)

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]."  See Cal. Bus. Prof. Code § 17200. U.S. Bank argues that, to the extent the Ninth Cause of Action is based on a violation of 12 U.S.C. § 2609, it is preempted by the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461, et seq.  The Court agrees.

HOLA preempts a variety of state laws, such as those "purporting to impose

14

requirements regarding . . . [l]oan-related fees, including, without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees," "[e]scrow accounts, impound accounts, and similar accounts," "[d]isclosure and advertising," as well as the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  See 12 C.F.R. § 560.2(5), (6), (9), (10).  Here, as noted, Rothman relies on the cap imposed by § 2609, which involves the servicing of a mortgage and loan-related fees; consequently, any such UCL claim predicated on § 2609 is preempted.  See Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004, 1006 (9th Cir. 2008) (finding UCL claim preempted where it "fit[] within" one of the categories described in 12 C.F.R. § 560.2; noting HOLA is "so pervasive as to leave no room for state regulatory control") (internal quotation and citation omitted).

As noted, Rothman's UCL claim is, in addition, derivative of his other causes of action.  Consequently, to the extent Rothman's UCL claim is based on his First, Second, Fifth, and Eighth Causes of Action, which the Court has found are subject to dismissal, his UCL claim is subject to dismissal with leave to amend.

Accordingly, Rothman's Ninth Cause of Action, to the extent it is based on § 2609, will be dismissed without leave to amend, and, to the extent is it based on his First, Second, Fifth, and Eighth Causes of Action, will be dismissed with leave to amend.

**CONCLUSION**

1.  U.S. Bank's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

a.  To the extent U.S. Bank seeks dismissal of the First, Second, Fifth, and Eighth Causes of Action, the motion is GRANTED and said claims are hereby DISMISSED with leave to amend as set forth above.

b.  To the extent U.S. Bank seeks dismissal of the Third, Fourth, Sixth, and Seventh Causes of Action, the motion is DENIED.

c.  To the extent U.S. Bank seeks dismissal of the Ninth Cause of Action, the motion is GRANTED in part and DENIED in part as set forth in the Discussion above.

2.  If Rothman wishes to file a Second Amended Complaint for purposes of curing any or all of the deficiencies identified above, any such Second Amended Complaint shall be filed no later than May 16, 2014.  Rothman may not, however, add new causes of action, new plaintiffs, or new defendants without leave of court.  See Fed. R. Civ. P. 15(a)(2).  If Rothman does not file a Second Amended Complaint within the time provided, the instant action will proceed on the remaining claims in the Amended Complaint.

**IT IS SO ORDERED.**

Dated: April 24, 2014

_____
MAXINE M. CHESNEY
United States District Judge