1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

MARSHAL ROTHMAN,

11

        Plaintiff,

12

    v.

13

U.S. BANK NATIONAL ASSOCIATION,

14

        Defendant.

15

_____/

No. 3:13-cv-03381-MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

16
17

    Before the Court is defendant U.S. Bank National Association's ("U.S. Bank") motion

18

to dismiss, filed June 26, 2014, by which U.S. Bank seeks dismissal of plaintiff Marshal

19

Rothman's ("Rothman") Third Amended Complaint ("3AC").  Rothman has filed opposition,

20

to which U.S. Bank has replied.

21

    Having read and considered the papers filed in support of and in opposition to the

22

motion, the Court deems the matter suitable for determination on the parties' respective

23

written submissions, and hereby rules as follows.[1]

24

**BACKGROUND**[2]

25

    On February 21, 2007, Rothman, a real estate developer, purchased a house at 18

26

Sheridan Court in Mill Valley, California ("the Property") and entered into a mortgage in the

27
28

_____

[1] By order filed July 30, 2014, the Court vacated the hearing set for August 1, 2013.

[2] The following facts are taken from the 3AC.

United States District Court

For the Northern District of California

1   amount of $2,802,500.00 with Downey Savings and Loan Association. F.A. ("Downey").

2   (See 3AC ¶¶ 1, 6, 12.)  Rothman's mortgage and note subsequently were assigned to U.S.

3   Bank.  (See 3AC ¶ 13.)

4       "In or around May 2011," Rothman submitted a loan modification application to U.S.

5   Bank.  (Id. ¶ 14.)  In February 2012, having received no response, Rothman "became

6   delinquent on his mortgage payments" in an effort to cause U.S. Bank to "respond to his

7   loan modification application in a more timely fashion."  (See id. ¶ 15.)  After approximately

8   two months, in April 2012, U.S. Bank informed Rothman of its intent to foreclose upon the

9   Property and appointed one of its employees, Christopher Parrish ("Parrish"), to be

10  Rothman's "point of contact" with the bank.  (See id. ¶¶ 16-17.)

11      "On or around April 11, 2012," Parrish informed Rothman he should "not worry"

12  about the bank's threat to foreclose because foreclosure proceedings "took a long time"

13  and because Rothman had a pending loan modification application.  (Id. ¶ 18.)

14  Approximately four months later, "on or around August 28, 2012," Rothman called U.S.

15  Bank's foreclosure department and spoke with an employee named Maria Carlos

16  ("Carlos").  (See id. ¶ 23.)  Carlos was a "specialist in U.S. Bank's[3] foreclosure department

17  dealing with reinstatement of delinquent mortgages," and "[a]s part of her normal job

18  functions, she had access to U.S. Bank's records that purportedly showed that [Rothman]

19  had missed several monthly escrow payments."  (Id. ¶¶ 33-34.)  Rothman asked Carlos

20  "what amount he needed to pay to cure his delinquent mortgage balance and reinstate his

21  loan."  (Id. ¶ 23.)  Carlos told Rothman that "paying $74,643.23 would make him current on

22  his mortgage and halt the foreclosure proceedings."  (Id. ¶ 24.)  Several days later,

23  Rothman paid $74,643.23 to U.S. Bank.  (Id. ¶ 25.)

24      At the time of his conversation with Carlos, Rothman believed he was current on his

25  property insurance and property taxes, which payments were made by U.S. Bank on his

26  _____

27      [3]In his 3AC, Rothman uses the abbreviation "US Bank."  In an effort to avoid
    numerous designations of alteration, the Court has substituted "U.S. Bank" for "US Bank" in
28  all quotations from the 3AC.

behalf out of monies paid by him into his escrow account.  (Id. ¶¶ 28-29.)  Shortly after said conversation, however, on September 4, 2012, Rothman received a letter from U.S. Bank, stating that "in order to reinstate his mortgage, he needed to make a payment of $53,031.69 for missed monthly payments and $4,993.61 for late charges" (id. ¶ 37), which additional amounts constituted "'escrow' charges levied by U.S. Bank on [Rothman] that were supposed to be used by U.S. Bank to pay for the property insurance and taxes on the Real Property" (id. ¶ 27).

When Rothman learned his $74,643.23 payment had not cured his indebtedness, he asked Parrish for an explanation.  (Id. ¶¶ 37-39.)  Parrish told Rothman he would look into the matter, and Rothman waited for him to respond.  (Id. ¶¶ 39-40).  Having received no response by December 2012, Rothman called Parrish, who "still had no useful information to clarify to Rothman as to what happened."  (Id. ¶ 43.)  Rothman thereafter asked Parrish to have U.S. Bank provide him with "a full accounting of his mortgage account so that he could determine why his $74,643.23 payment did not bring his mortgage current and so he could pay off what he legitimately owed to U.S. Bank in order to reinstate his mortgage." (Id. ¶ 44.)  U.S. Bank failed to generate the requested accounting.  (Id. ¶ 48.)  Rothman offered to resume making his monthly mortgage payments while he awaited the accounting, but U.S. Bank rejected his offer and told him it would not accept any "partial payments."  (Id. ¶ 49.)

"On or around April 16, 2013," after "numerous requests and phone calls by [Rothman] to . . . Parrish," U.S. Bank sent Rothman a document called a "Customer Activity Statement" (id. ¶ 50), which Rothman, despite his efforts to obtain an explanation from Parrish, could not comprehend (id. ¶¶ 52-53).

The following month, on May 16, 2013, U.S. Bank recorded a Notice of Default against the Property.  (Id. ¶ 61.)  On May 22, 2013, Rothman "had his attorneys issue a qualified written request ["QWR"] to U.S. Bank pursuant to the federal Real Estate Settlement Practices Act ["RESPA"]" (id. ¶ 57); see 12 U.S.C. § 2605(e) (setting forth "[d]uty of loan servicer to respond to borrower inquiries").  U.S. Bank responded to

1    Rothman's QWR but did not "provide the itemized statements that [Rothman] asked for . . .

2    [or] a statement explaining the reasons as to why it felt its records correctly reflected that

3    [Rothman] had not reinstated his mortgage." (Id. ¶ 59.)

4         "Throughout 2013," American Credit, a "credit cleaning service" Rothman hired,

5    "contacted the major credit reporting agencies and U.S. Bank . . . to inform them that U.S.

6    Bank had incorrectly reported to the various credit agencies that [Rothman] was delinquent

7    on his mortgage, given (1) [Rothman] should have been allowed to reinstate his loan

8    following his payment of $74,642.23 and (2) if [Rothman] was still delinquent, then U.S.

9    Bank was solely responsible for not allowing [Rothman] to cure that delinquency by

10   delaying in providing him accurate information as to his total indebtedness." (Id. ¶¶ 115-

11   16.)  In those same contacts, American Credit also stated "that U.S. Bank had incorrectly

12   reported to the various credit agencies that [Rothman] was late on his mortgage payments

13   given that U.S. Bank had rejected [his] offer to resume making those monthly mortgage

14   payments." (Id. ¶ 117.)  "[T]he major credit reporting agencies investigated and determined

15   that [Rothman's] dispute was colorable and contacted U.S. Bank regarding this dispute" (id.

16   ¶ 118), but U.S. Bank thereafter "failed to report the results of its internal investigation as to

17   [Rothman's] claims to the various credit reporting agencies" (id. ¶ 119).

18        On March 26, 2014, Rothman, in "[f]rustrat[ion]," issued a cashier's check to U.S.

19   Bank in the amount of $393,995.78, the amount U.S. Bank, on March 3, and March 19,

20   2014, had "confirmed" to Rothman would reinstate his mortgage if paid by March 28, 2014.

21   (Id. ¶¶ 65-67.)  That same date, however, U.S. Bank recorded a Notice of Trustee's Sale

22   on the Property.  (Id. ¶ 68.)  On March 28, 2014, Rothman contacted U.S. Bank and was

23   informed his mortgage had been reinstated (id. ¶ 69), and by April 9, 2014, the Notice of

24   Default had been cancelled (id. ¶ 71).  Nevertheless, on April 17, 2014, a "U.S. Bank

25   employee" called Rothman and informed him that he was again delinquent.  (Id. ¶ 72.)

26        U.S. Bank's recording of the Notice of Default "severely damaged" Rothman's credit

27   rating, thus impacting his business, which "is dependent upon his good credit score and

28   easy access to capital and debt."  (Id. ¶¶ 61-62.)  U.S. Bank's recording of the Notice of

1    Trustee's Sale "further damaged" Rothman's credit score.  (Id. ¶ 68.)  As a result of his

2    damaged credit score, Rothman could no longer obtain financing at interest rates

3    customarily offered to him and instead was "forced to take 'hard money' loans carrying

4    exorbitant interest rates," which "will result in him paying hundreds of thousands of dollars

5    in interest charges that he would not have had to pay under his prior credit score."  (Id.

6    ¶ 62.)

7         In his 3AC, Rothman asserts the following nine causes of action: (1) "Negligent

8    Misrepresentation - Cal. Civ. Code § 1710.2"; (2) "Breach of Contract"; (3) "Breach of the

9    Implied Covenant of Good Faith and Fair Dealing"; (4) "RESPA–12 U.S.C. §§ 2601, et

10   seq."; (5) "Promissory Estoppel"; (6) "Fair Credit Reporting Act - 15 U.S.C. 1681s-2(b)"; (7)

11   "California Credit Reporting Agencies Act - Cal. Civ. Code § 1785.25(a)"; (8) "Fraud - Cal.

12   Civ. Code §§ 1709 et seq."; and (9) "Cal. Bus. & Prof. Code §§ 17200, et seq."

13        By the instant motion, U.S. Bank argues Rothman fails to adequately plead his First,

14   Fourth, Sixth, Eighth, and Ninth Causes of Action.[4]

15                              **Legal Standard**

16        Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based

17   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

18   cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

19   1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim

20   showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S.

21   544, 555 (2007) (quoting Fed.R.Civ.P. 8(a)(2)).  Consequently, "a complaint attacked by a

22   Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.

23   Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief

24   requires more than labels and conclusions, and a formulaic recitation of the elements of a

25   cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

26

27   _____

28        [4]U.S. Bank has withdrawn its motion to dismiss to the extent it challenged
     Rothman's Seventh Cause of Action.  (See Reply at 8 n. 3.)

1    In analyzing a motion to dismiss, a district court must accept as true all material

2   allegations in the complaint, and construe them in the light most favorable to the

3   nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

4   "To survive a motion to dismiss, a complaint must contain sufficient factual material,

5   accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

6   556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must

7   be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at

8   555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

9   allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

10                                   **DISCUSSION**

11        **A. First Cause of Action: Negligent Misrepresentation**

12        Rothman's First Cause of Action is based on Carlos's statement that "paying

13   $74,643.23 would make [Rothman] current on his mortgage and halt the foreclosure

14   proceedings," in which Carlos "failed to include . . . approximately $60,000 in 'escrow'

15   charges" Rothman actually needed to pay "in order to reinstate his mortgage." (See 3AC

16   ¶¶ 24, 27, 76-77).  In its prior order, the Court dismissed Rothman's previous negligent

17   misrepresentation claim because "Rothman [did] not allege Carlos lacked a reasonable

18   basis for believing the content of her statement" that a $74,643.23 payment would bring

19   Rothman current on his mortgage.  (See Order Granting in Part and Denying in Part

20   Defendant's Motion to Dismiss (hereinafter "Order"), filed Apr. 24, 2014, at 8:17-21.)

21        Under California law, to establish a claim for negligent misrepresentation, a plaintiff

22   must allege "(1) the misrepresentation of a past or existing material fact, (2) without

23   reasonable ground for believing it to be true, (3) with intent to induce another's reliance on

24   the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting

25   damage."  Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226,

26   243 (2007).  A negligent representation claim thus fails if the party making the

27

28

1    representation had a reasonable ground for believing it to be true.[5]

2        In his 3AC Rothman now alleges that Carlos, "as part of her normal job functions,

3    . . . had access to U.S. Bank's records that purportedly showed that he had missed several

4    monthly escrow payments" (3AC ¶ 34); that "Carlos knew or should have known that U.S.

5    Bank would also require [Rothman] to pay off any missed monthly escrow payments as a

6    condition of reinstating his mortgage" (id.); and that Carlos, "as all of [U.S. Bank's]

7    foreclosure specialists . . . would have ready access to U.S. Bank records showing that it

8    would require [Rothman] to pay approximately $60,000 more in purportedly overdue

9    escrow payments in order to reinstate his mortgage" (id. ¶ 77).  Such allegations, in the

10   absence of any supporting facts, are conclusory in nature and, as such, insufficient to plead

11   a claim of negligent misrepresentation.  In any event, even if deemed factual, an allegation

12   that Carlos had "access" to records reflecting additional charges is insufficient to support a

13   finding that Carlos had no reasonable ground for believing her statement to be true.

14       In its prior order, the Court dismissed Rothman's negligent misrepresentation claim;

15   in so doing, the Court, as noted above, expressly identified as a deficiency Rothman's

16   failure to allege facts showing "Carlos lacked a reasonable basis for believing the content

17   of her statement" (see Order at 8:17-21) and afforded Rothman leave to amend (see id. at

18   8:22-23).  In his 3AC, Rothman as discussed above, has not cured said deficiency, nor has

19   he suggested any additional facts he could allege if given an additional opportunity to plead

20   the claim.

21       Accordingly, the First Cause of Action will be dismissed without further leave to

22   amend.

23   // //

24   // //

25

26       [5]Under California law, a misrepresentation of fact without a reasonable ground for
27   believing it to be true is a form of "fraudulent deceit," see Cal. Civ. Code § 1709-10, and, as
     such, must be pled with particularity, see Fed. R. Civ. P. 9(b); Vidor v. Am. Int'l Grp., Inc.,
28   491 F. App'x 828, 829 (9th Cir. 2012).

1

**B. Fourth Cause of Action: RESPA–12 U.S.C. §§ 2601, et seq.**

Rothman's Fourth Cause of Action alleges he sent U.S. Bank a QWR pursuant to RESPA, see 12 U.S.C. § 2605(e), but that U.S. Bank "failed to provide a meaningful written clarification to [Rothman] as to why [his] account was correct as determined by U.S. Bank." (See 3AC ¶ 101.)  In its prior order, the Court dismissed Rothman's RESPA claim because Rothman "fail[ed] to allege the date or contents of the QWR" (see Order at 11:26-12:1) and failed to "state[] what, if any, harm he alleges constituted 'a loss . . . related to the RESPA violation itself'" (see id. at 12:6-8) (quoting Hensley v. Bank of New York Mellon, 2011 WL 4084253, at *4 (E.D. Cal. Sept. 14, 2011)).

U.S. Bank no longer challenges the pleadings on the first such ground, reasserts the second, and, in addition, argues that Rothman fails to plead facts showing U.S. Bank qualifies as a "servicer" under RESPA.

**1. "Servicer"**

Under RESPA, loan servicers have a number of duties upon their receipt of a QWR. See 12 U.S.C. § 2605(e).  The term "servicer," as defined therein, "means the person responsible for servicing of a loan," see 12 U.S.C. § 2605(i)(2); the term "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principle and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan," see 12 U.S.C. § 2605(i)(3).  In the 3AC, Rothman alleges "U.S. Bank had been collecting [from him] monthly escrow payments" from which U.S. Bank paid "on behalf of [Rothman]" the "property insurance and taxes for the . . . Property" (3AC ¶ 28), and further alleges U.S. Bank is the entity that responded to his QWR, albeit according to Rothman, inadequately (see id. ¶ 59).  Consequently, the Fourth Cause of Action is not subject to dismissal on grounds that Rothman fails to plead facts showing U.S. Bank was the "servicer" of his mortgage.

// //

8

### 2. Actual Damages

In its prior order, the Court dismissed Rothman's RESPA claim on the ground that Rothman had, <u>inter alia</u>, only alleged in general terms that he had "'been damaged by U.S. Bank's actions.'"  (<u>See</u> Order at 12:6-8 (quoting Amended Complaint ¶ 91).)

To state a claim for a RESPA violation, a plaintiff must allege "actual damages" constituting "a loss . . . related to the RESPA violation itself."  <u>See</u> <u>Hensley</u>, 2011 WL 4084253, at *4; <u>see also</u> 12 U.S.C. § 2605(f) (providing for recovery of "actual damages to the borrower as a result of the failure" to respond adequately to a QWR).  Here, the 3AC alleges U.S. Bank's inadequate response to Rothman's QWR prevented him from ascertaining the amount needed to reinstate his mortgage, which, had he received the requisite response, Rothman would have paid, and, that as a result of such failure by U.S. Bank to respond adequately, his credit rating was "adversely affected."  (<u>See</u> 3AC ¶¶ 59, 62, 102.)

Injury to a credit score is sufficient to constitute "actual damages" as required by RESPA.  <u>See</u>, <u>e.g.</u>, <u>Hutchinson v. Delaware Savings Bank</u>, 410 F. Supp. 2d 374, 383 (D.N.J. 2006); <u>Cortez v. Keystone Bank, Inc.</u>, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000).  U.S. Bank contends, however, that any such harm suffered was not caused by U.S. Bank's response to Rothman's QWR, but rather by Rothman's initial failure to make his mortgage payments and continued failure to remedy the arrearage after receiving notice thereof in September 2012, long before he sent his QWR.  Although, as Rothman concedes, "some of the damage to [his] credit rating did occur prior to the issuance of his [QWR]" (<u>see</u> Opp'n at 11:16-17), he alleges, as set forth above, that subsequent to such request, he sustained further harm to his credit score as a result of his inability to cure the delinquency, given U.S. Bank's failure to provide him with the requested necessary information.

Accordingly, U.S. Bank's motion to dismiss Rothman's Fourth Cause of Action will be denied.

// //

1    **C. Sixth Cause of Action: Fair Credit Reporting Act - 15 U.S.C. § 1681s-2(b)**

2         The Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) ("FCRA") was adopted by

3    Congress "to protect[] . . . consumers from inaccurate information in consumer reports" and

4    to "establish[] . . . credit reporting procedures that utilize correct, relevant, and up-to-date

5    information in a confidential and responsible manner."  See Jones v. Federated Financial

6    Reserve Corp., 144 F.3d 961, 965 (6th Cir.1998).  The FCRA imposes duties on both

7    "consumer reporting agencies" ("CRAs"), see Gorman v. Wolpoff & Abramson, LLP, 584

8    F.3d 1147, 1152 (9th Cir. 2009), and "sources that provide credit information to CRAs,

9    called 'furnishers' in the statute."  Id. at 1153.  "Lenders" are among the "most common . . .

10   furnishers of information."  H.R.Rep. No. 108–263, at 24 (2003).  The FCRA places upon

11   furnishers a "general duty 'to provide accurate information' to a [CRA]" and "outlines duties

12   imposed on furnishers that are triggered upon 'notice of dispute' from a CRA."  Swisher v.

13   JP Morgan Chase Bank, 2012 WL 6214394 (E.D. Wash. Dec. 13, 2012) (internal citation

14   omitted).

15        Rothman's Sixth Cause of Action alleges U.S. Bank violated the FCRA by reporting

16   to various CRAs that Rothman was delinquent on his loan and thereafter failing to respond

17   properly to the CRAs about the results of its investigation into Rothman's dispute about his

18   loan.  As discussed below, U.S. Bank challenges the 3AC on several grounds.

19        U.S. Bank argues that Rothman does not allege he "filed a complaint" with the

20   CRAs.  (See Mot. At 7:9.)  As noted above, Rothman alleges a "credit cleaning service,"

21   American Credit, "contacted the major credit reporting agencies" on his behalf "to inform

22   them that U.S. Bank had incorrectly reported . . . that [Rothman] was delinquent on his

23   mortgage."  (See 3AC ¶¶ 115-116.)  U.S. Bank cites to no authority requiring the notice of

24   dispute given by a consumer to a CRA come from the consumer himself, rather than from

25   his agent, or that it be in any particular form.[6]  See 15 U.S.C. § 1681i-(a)(1)A, -(a)(2)B

26   _____

27        [6]U.S. Bank does argue correctly that any alleged notice given by a consumer to U.S.
     Bank directly does not suffice to trigger any duty owed by U.S. Bank under the FCRA.  See
28   Gorman, 584 F.3d at 1172-73.

1   (providing duties of CRA triggered when "consumer notifies the [CRA] directly").

2           U.S. Bank further argues that Rothman fails to adequately allege that U.S. Bank

3   ever received notice of the dispute from any CRA.  To state a claim under against a

4   furnisher under the FCRA, a plaintiff must allege facts showing that the furnisher received

5   notice of the dispute at issue from a CRA, rather than from some other source.  See 15

6   U.S.C. § 1681s-2(b) (setting forth "[d]uties of furnishers of information upon notice of

7   dispute . . . pursuant to section 1681(a)(2)"); see also 15 U.S.C. § 1681(a)(2)(b) (requiring

8   CRA to "provide to [furnisher] all relevant information regarding the dispute"); Gorman, 584

9   F.3d at 1154 (9th Cir. 2009) (holding furnisher's duties "arise only after the furnisher

10  receives notice of dispute from a CRA").  U.S. Bank argues that Rothman's allegation "on

11  information and belief," that U.S. Bank received the requisite notification, is insufficient,

12  particularly in light of 15 U.S.C. § 1681i(2)(B), under which, according to U.S. Bank, the

13  CRAs were required to provide Rothman written confirmation that they had in fact

14  contacted U.S. Bank.

15          U.S. Bank's reliance on § 1681i(2)(B) is misplaced.  Section 1681i(2)(B) requires

16  CRAs to give information about the dispute to U.S. Bank, not Rothman.  See Lang v. TCF

17  Nat'l Bank, 2007 WL 2752360, at *2 (7th Cir. Sept. 21, 2007) (noting "the FCRA does not

18  require a CRA to tell a consumer when it notifies a furnisher of information about the

19  consumer's dispute") (emphasis in original).  Indeed, in recognition thereof, a number of

20  courts have held a consumer may state a plausible claim for relief under

21  § 1681s–2(b) without expressly alleging such notification.  See, e.g., Vartanian v. Portfolio

22  Recovery Associates, LLC, 2013 WL 877863, *4 (C.D. Cal. Mar. 7, 2013) (holding plaintiff's

23  allegation "'on information and belief' that the CRAs contacted [defendant furnisher] about

24  [plaintiff's] dispute" sufficient to plead claim under § 1681s-2(b); noting "[plaintiff] cannot

25  know for sure the extent of communications, if any, between the CRAs and [defendant]");

26  see also Lang, 2007 WL 2752360, at *2 (holding plaintiff met pleading requirements where

27  complaint alleged plaintiff "told . . . a [CRA] that [defendant] furnished false information, that

28  [defendant] refused to investigate or correct the false report even after learning of the

11

1    asserted error, and that it thereby violated the FCRA"); Freeman v. Equifax, Inc., 2012 WL

2    2502693 (D.S.C. June 28, 2012) (holding plaintiff could state "plausible claim" by alleging

3    "(1) that the plaintiff notified a CRA that the defendant furnished false information; (2) that

4    the defendant-furnisher refused to investigate or correct the false report after learning of

5    the alleged error; and (3) that it thereby violated the FCRA").

6         Here, as discussed above, Rothman alleges "American credit contacted the major

7    [CRAs] . . . to inform them that U.S. Bank had incorrectly reported . . . that [Rothman] was

8    delinquent on his mortgage . . . [and] late on his mortgage payments" (3AC ¶¶ 116-17), and

9    that U.S. Bank, after "receipt of . . . the notices of dispute sent to U.S. Bank by the major

10   [CRAs]" (3AC ¶ 119), violated the FCRA when it did not "report the results of its internal

11   investigation as to [Rothman's] claims to the various [CRAs]." (Id.)  For the reasons set

12   forth in the above-cited authorities, such allegations are sufficient to plead U.S. Bank's

13   receipt of notice.

14        Lastly, U.S. Bank argues that Rothman has failed to adequately plead any facts to

15   support his allegation that U.S. Bank's investigation found its reports to the credit reporting

16   agencies were misleading.  The FCRA requires a furnisher of information, upon receiving

17   notice of a dispute from a CRA, to "conduct an investigation" and to "report the results of

18   the investigation to the [CRA]."  See 15 U.S.C. § 1681s–2(b)(1)(A), (C).  In other words,

19   whatever the results of its investigation, U.S. Bank was required to report something to the

20   CRA.  Consequently, Rothman's allegation that U.S. Bank "failed to report the results of its

21   internal investigation as to [his] claims to the various credit reporting agencies" (see 3AC

22   ¶ 119) is sufficient.

23        Accordingly, U.S. Bank's motion to dismiss Rothman's Sixth Cause of Action will be

24   denied.

25        **D. Eighth Cause of Action Fraud - Cal. Civ. Code §§ 1709 et seq."**

26        Rothman's Eighth Cause of Action alleges U.S. Bank committed fraud when U.S.

27   Bank, through its agent Carlos, "deliberately misrepresented, or was knowingly reckless

28   about representing[,] to [him] that his total indebtedness was $74,643.23," and by omitting

1   that he in fact he owed "approximately $60,000 more" (3AC, ¶¶ 131-132).

2       Under California law, fraud is an "intentional tort," see City of Atascadero v. Merrill

3   Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App. 4th 445, 482 (1998), the elements of

4   which are: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2)

5   knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable

6   reliance; and (5) resulting damage," Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226,

7   1239 (1995) (internal quotation and citation omitted).

8       Rothman, in his 3AC, fails to plead the second element of fraud.  As discussed

9   above, the allegations in the 3AC lack sufficient facts to plead a claim of negligent

10  misrepresentation, i.e., a claim that Carlos had no reasonable ground for believing to be

11  true her statement to Rothman that a payment of $74,643.23 would bring him current on

12  his mortgage.  A claim of fraud requires an even greater showing, specifically, that the

13  statement was made with knowledge of its falsity and with an intent to deceive.  See id.;

14  see also Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 974 (1997) (noting "[f]alse

15  representations made recklessly and without regard for their truth in order to induce action

16  by another are the equivalent of misrepresentations knowingly and intentionally uttered")

17  (internal quotation and citation omitted).

18      As discussed above in connection with Rothman's First Cause of Action, Rothman

19  has been afforded a sufficient opportunity to plead a claim based on Carlos's statement

20  and has failed to do so.

21      Accordingly, Rothman's Eighth Cause of Action will be dismissed without leave to

22  amend.

23      **E. Ninth Cause of Action: Cal. Bus. & Prof. Code §§ 17200, et seq.**

24      In his Ninth Cause of Action, Rothman alleges U.S. Bank violated California's Unfair

25  Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200, et seq., by committing the

26  violations alleged in Rothman's First, Fourth, Sixth, Seventh, and Eighth Causes of Action

27

28

1   (see 3AC ¶¶ 136-37),[7] and consequently, is derivative thereof.  See Berryman v. Merit

2   Prop. Mgmt., 152 Cal. App. 4th 1544, 1554 (2007) (holding "[u]nder its 'unlawful' prong, the

3   UCL borrows violations of other laws . . . and makes those unlawful practices actionable

4   under the UCL").  As discussed above, Rothman's First and Eighth Causes of Action are

5   subject to dismissal and Rothman's Fourth and Sixth Causes of Action are not subject to

6   dismissal.

7         Accordingly, Rothman's Ninth Cause of Action will be dismissed to the extent it is

8   based on the First and Eighth Causes of Action.

9                                     **CONCLUSION**

10        For the reasons stated above, U.S. Bank's Motion to Dismiss is hereby GRANTED

11  in part and DENIED in part as follows:

12        1. With respect to Rothman's First Cause of Action (Negligent Misrepresentation),

13  the motion is hereby GRANTED, and such claim is hereby DISMISSED without leave to

14  amend.

15        2. With respect to Rothman's Fourth Cause of Action (RESPA - 12 U.S.C. §§ 2601,

16  et seq.), the motion is hereby DENIED.

17        3. With respect to Rothman's Sixth Cause of Action (Fair Credit Reporting Act - 15

18  U.S.C. § 1681s-2(b)), the motion is hereby DENIED.

19        4. With respect to Rothman's Eighth Cause of Action (Fraud - Cal. Civ. Code

20  §§ 1709 et seq.), the motion is hereby GRANTED, and such claim is hereby DISMISSED

21  without leave to amend.

22        5. With respect to Rothman's Ninth Cause of Action (Cal. Bus. & Prof. Code

23  §§ 17200, et seq.), the motion is hereby DENIED to the extent said claim is based on the

24  Fourth and Sixth Causes of Action; to the extent said claim is based on the First and Eighth

25  _____

26        [7] To the extent the 3AC alleges a § 17200 claim based on California Civil Code
27  § 2924.17 (see 3AC ¶ 138), such claim has, in effect, been withdrawn.  (See Opp'n at 12 n.
    2 (stating Rothman "does not oppose U.S. Bank's motion to dismiss as to any UCL claim
28  arising out of section 2924.17").)

1   Causes of Action the motion is GRANTED and the claim is DISMISSED, without leave to

2   amend, to the extent based thereon.

3           **IT IS SO ORDERED.**

4

5   Dated: October 3, 2014                          _____

6                                                   MAXINE M. CHESNEY
                                                    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28